IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAWUD ISLAM,

     Plaintiff,

v.                               Civil Action No. 3:19CV257

COLETTE MCEACHIN,

     Defendant.

**MEMORANDUM OPINION**

Dawud Islam, a Virginia inmate proceeding pro se, filed this 42 U.S.C. § 1983 action challenging the constitutionality of section 19.2-327.1 the Virginia Code.[1]  Islam contends that his "right to due process is being violated [by] Defendant's refusal under state law to allow access to biological evidence for purposes of forensic DNA testing in order to prove Plaintiff's innocence." (ECF No. 17, at 4-5 (citation omitted).)  The matter is before the Court on DEFENDANT's MOTION FOR SUMMARY JUDGMENT filed by Defendant McEachin and Intervenor Commonwealth of Virginia.  (ECF No. 39.)  For the reasons set forth below, the Motion for Summary Judgment will be granted.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.  The Court corrects the punctuation, spelling, and capitalization in the quotations from the parties' submissions.  The Court omits the emphasis from the quotations from the parties' submissions.

## I.    PROCEDURAL HISTORY

As pertinent here, following a jury trial, the Circuit Court for the City of Richmond ("Circuit Court") convicted Islam of rape, sodomy, one count of attempted anal sodomy, and one count of burglary.  (ECF No. 41, at 2.)  The Circuit Court sentenced Islam to life in prison for the rape and sodomy convictions, ten years for the attempted anal sodomy conviction, and twenty years for the burglary conviction.  (Id.)

After Islam's request for testing of biological evidence pursuant to section 19.2-327.1 the Virginia Code was rejected by the Circuit Court, he filed the present 42 U.S.C. § 1983 action in this Court was rejected by the Circuit Court.  Because he challenged the constitutionality of a Virginia statute, by Memorandum Order entered on February 2, 2021, the Court notified the Attorney General for the Commonwealth of Virginia of his right to intervene.  (ECF No. 32.)  Thereafter, the Commonwealth of Virginia intervened and a filed a Memorandum in Support of the Motion for Summary Judgment.  (ECF No. 41.)  Although the Court has granted Islam several extensions of time to respond to the Motion for Summary Judgment (ECF Nos. 46, 49), he has not filed a response.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant

2

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
The party seeking summary judgment bears the responsibility to
inform the court of the basis for the motion, and to identify the
parts of the record which demonstrate the absence of a genuine
issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986).  "[W]here the nonmoving party will bear the burden
of proof at trial on a dispositive issue, a summary judgment motion
may properly be made in reliance solely on the pleadings,
depositions, answers to interrogatories, and admissions on file."
Id. at 324 (internal quotation marks omitted).  When the motion is
properly supported, the nonmoving party must go beyond the
pleadings and, by citing affidavits or "'depositions, answers to
interrogatories, and admissions on file,' designate 'specific
facts showing that there is a genuine issue for trial.'"  Id.
(quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw
all justifiable inferences in favor of the nonmoving party."
United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th
Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
255 (1986)).  However, a mere "scintilla of evidence" will not
preclude summary judgment.  Anderson, 477 U.S. at 251 (citing
Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)).

### III.   SUMMARY OF RELEVANT FACTS

In the present case, the viability of Islam's claim turns on analysis of the relevant statute, Virginia Code section 19.2-327.1.   That statute authorizes a convicted Virginia inmate to file a motion for "new scientific investigation of any human biological evidence related" to his criminal case if certain conditions are met.   Va. Code Ann. § 19.2-327.1(A) (West 2021).[2] An inmate must satisfy a five-part test set forth in the statute:

> (i) the evidence was not known or available at the time the conviction . . . became final in the circuit court or the evidence was not previously subjected to testing;
>
> (ii) the evidence is subject to a chain of custody sufficient to establish that the evidence has not been altered, tampered with, or substituted in any way;
>
> (iii) the testing is materially relevant, noncumulative, and necessary and may prove the actual innocence of the convicted person . . . ;
>
> (iv) the testing requested involves a scientific method generally accepted within the relevant scientific community; and
>
> (v) the person convicted . . . has not unreasonably delayed the filing of the petition after the evidence or the test for the evidence became available.

Id.   § 19.2-327.1(A)(i)-(v).   The convicted inmate must also "assert categorically and with specificity, under oath, the facts

---

[2] This provision works in tandem with section 19.2-327.3 of the Virginia Code, which provides a mechanism for a convicted felon to seek a writ of actual innocence based on human biological evidence.   Virginia also provides for a writ of actual innocence based on non-biological evidence.   Va. Code § 19.2-370.10 (West 2021).

to support" each of the statutory requirements, as well as "the reason or reasons the evidence was not known or tested by the time the conviction . . . became final in the circuit court" and "the reason or reasons that the newly discovered or untested evidence may prove the actual innocence of the person convicted . . . ." Id. § 19.2-327.1(B)(i)-(iii). A proceeding under the DNA statute is not authorized to "form the basis for relief in any habeas corpus proceeding or any other appeal." Id. § 19.2-327.1(F).

Islam asserts that, "[t]he sole key evidence linking Plaintiff to this crime is forensic scientist Brian L. Covington's analysis of sperm fractions in the victim's PERK, which Covington claimed yielded a 'cold hit' to Plaintiff's DNA profile in the database and matched the DNA profile collected from Plaintiff's blood sample." (ECF No. 17, at 5.) Islam contends that this evidence is fabricated because "there is a difference between the two samples: Plaintiff's 'known sample' and the sample in evidence (the victim's PERK)." (Id. at 8.) Islam asserts that this difference actually appears in the computerized testing results of the two DNA profiles, but that Covington misrepresented that no difference existed in his certificate of analysis.[3] (Id. at 9-10.)

---

[3] Islam contends that "[t]he difference, which Covington denied exists, can be most simply seen in the computerized typing of the known sample that Plaintiff provided and the sample in evidence." (ECF No. 17, at 10.)

5

On December 12, 2016, Islam sought scientific analysis of the victim's PERK kit pursuant to section 19.2-327.1 of the Virginia Code. (Id. at 3.) "In his motion seeking scientific analysis, [Islam] asserted that the results of his previous scientific testing were falsified by forensic scientist Brian L. Covington from the Virginia Department of Forensic Science, and [Islam] provided unrefutable [sic] proof thereof." (Id. at 4.) On April 14, 2017, the Circuit Court "denied the motion, stating, 'these are not eligible grounds for a motion [for scientific analysis] pursuant to Virginia Code § 19.2-327.1.'" (Id. (alteration in original).)

## IV. ANALYSIS

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). As a preliminary matter, "there is no substantive due process right to the postconviction preservation and testing of DNA evidence." Casey v. Hurley, 671 F. App'x 137, 137-38 (4th Cir. 2016) (citing Dist. Att'y's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 72 (2009); Skinner v. Switzer, 562 U.S. 521, 525 (2011).

6

However, an inmate may have a protected "liberty interest in demonstrating his innocence with new evidence under state law." Osborne, 557 U.S. at 68.[4]

The United States Court of Appeals for the Fourth Circuit concluded that, "[w]hen a state has created a right to DNA testing -- as Virginia does in its DNA statute -- that 'state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.'" LaMar v. Ebert, 756 F. App'x 245, 248-49 (4th Cir. 2018) (quoting Osborne, 557 U.S. at 68). Nevertheless, "due process does not 'dictate the exact form' of post-conviction assistance a State must provide." Id. at 251 (quoting Morrison v. Peterson, 809 F.3d 1059, 1065 (9th Cir. 2015)). The Supreme Court of the United States framed the relevant inquiry as follows:

> [T]he question is whether consideration of [the plaintiff's] claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental

---

[4] "The Rooker-Feldman doctrine bars the lower federal courts, 'with the exception of habeas corpus actions,' from sit[ting] in direct review of state court decisions." LaMar v. Ebert, 681 F. App'x 279, 286 (4th Cir. 2017) (citing Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997)). Thus, "a state-court decision [on a motion for forensic testing] is not reviewable by lower federal courts." Skinner, 562 U.S. at 532 (citing District of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 487 (1983); Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 286 (2005)). However, the constitutionality of a "statute or rule governing the decision may be challenged in a federal action." Id. at 532 (citation omitted).

> fairness in operation. <u>Federal courts may upset a State's</u>
> <u>postconviction relief procedures only if they are</u>
> <u>fundamentally inadequate to vindicate the substantive</u>
> <u>rights provided.</u>

<u>Osborne</u>, 557 U.S. at 69 (internal citations and quotation marks omitted) (emphasis added).

Here, Islam contends that Virginia's postconviction relief procedures are fundamentally inadequate as applied to him because they fail to provide for retesting of biological evidence when the state's prior testing allegedly exonerated him, but the state's forensic scientist misrepresented those results in his certificate of analysis and his testimony.[5] Virginia's postconviction relief procedures already provide a remedy for instances where a Department of Forensic Science ("DFS") scientist intentionally or negligently misrepresents the results of DNA testing. See <u>In re Scott</u>, 824 S.E.2d 1, 12 (Va. 2019). Specifically, "non-DFS experts are not prohibited from analyzing and interpreting the DNA test

---

[5] Islam does not appear to contend that section § 19.2-327.1 of the Virginia Code is facially invalid. Moreover, any such challenge would likely fail because § 19.2-327.1 of the Virginia Code "contains similar requirements and limitations imposed by other DNA-testing statutes, including the postconviction statute upheld in <u>Osborne</u>." <u>Thompson v. Rundle</u>, 393 F. App'x 675, 679-80 (11th Cir. 2010) (citing <u>Osborne</u>, 557 U.S. at 63-66; <u>Cunningham v. Dist. Atty's Off. for Escambia Cty.</u>, 592 F.3d 1237, 1266 (11th Cir. 2010)). Specifically, Virginia's statute and the statute upheld in <u>Osborne</u> and <u>Thompson</u> "(1) require the claimant to make a sufficient showing that additional DNA testing could demonstrate his actual innocence, (2) exempt the claim from applicable time limits, and (3) provide a successful claimant access to additional DNA testing." <u>Id.</u> (comparing Fla. R. Crim. P. 3.853 with <u>Osborne</u>, 557 U.S. at 63-66).

results certified by the DFS." Id. "[I]n this instance, the DNA testing involved," which, according to Islam, shows his innocence, "was performed by DFS pursuant to its standards. . . . There is no statutory or other prohibition that would prevent a trier of fact from hearing such testimony from a qualified non-DFS expert witness in an actual innocence case." Id. For that reason, the Court cannot conclude that § 19.2-327.1 of the Virginia Code is fundamentally inadequate to vindicate the ability of inmates to access testing or other means to prove their innocence. See Lamar, 756 F. App'x at 251. Accordingly, Islam has failed to demonstrate that he was denied due process by Virginia's post-conviction procedures.

### V.   CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 39) will be granted. Islam's claim will be dismissed. The action will be dismissed.

The Clerk is directed to send a copy of the Memorandum Opinion to Islam.

It is so ORDERED.

/s/ _RP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 22, 2021

9